UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LUCIENA S. GRANT-FLETCHER | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil No.: 1-11-cv-02072-WMN |
| THE BRACHFELD LAW GROUP, PC | ) | |
| *Defendant.* | ) | |

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintinff Luciena S. Grant-Fletcher, through her undersigned attorneys, makes the following opposition to the motion to dismiss filed by Defendant The Brachfeld Law Group, PC. ("Brachfeld").

### I.     Introduction

Luciena Grant-Fletcher filed a First Amended Complaint in this action in response to a motion to dismiss filed by the Defendant. The First Amended Complaint (FAC) clarified and expanded upon the original complaint in several important respects: it eliminated claims under the Maryland Consumer Protection Act (Md. Comm. Code Ann. § 13-301, *et seq.*), explained in greater factual detail the allegations surrounding Brachfeld's violations under the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*) and the Maryland Consumer Debt Collection Act (Md. Comm. Code Ann. § 14-201, *et seq.*), and expanded the case to include class action allegations on behalf of similarly situated Maryland consumers.  Brachfeld has responded to the FAC with another motion to dismiss, raising many of the same arguments from its original

1

motion. As will be seen below, Ms. Grant-Fletcher has stated viable claims under both the FDCPA and the MCDCA.

## II.   Argument

### A.  Plaintiff has sufficiently alleged that the debt was a consumer debt

Brachfeld's first argument questions Ms. Grant-Fletcher's status as a "consumer" under the two statutes. (Citing, *Dokumaci v. MAF Collection Svcs.,* 2010 WL 2560024 (M.D. Fla. June 17, 2010)).[1] Brachfeld claims that Ms. Grant-Fletcher's assertion of consumer status is merely "formulaic." The adjective more is more aptly applied to Brachfeld's argument. Ms. Grant-Fletcher added allegations in the FAC to explain that the debt arose out of her use of a credit card for personal and household purposes. (FAC ¶ 7). She further alleged that it was a "Salute Gold Card." (FAC ¶ 13). Ms. Grant-Fletcher's pleading could not be clearer or more detailed, short of saying that she used the card to buy toothpaste, groceries, or socks. That level of specificity, however, is *not* required under any reading of the controlling cases.

The FDCPA applies to "any obligation or alleged obligation … to pay money arising out of a transaction in which the money …which [is] the subject of the transaction [is] primarily for personal, family, or household purposes…." 15 U.S.C. § 1692a(5) . In *Laufman v. Phillips & Burns, Inc.,* 2008 WL 190604 (M.D. Fla. January 22, 2008), in the same district court that decided *Dokumaci,* the court recognized the statute to be applicable to debts that arise from personal credit card usage. Nothing more is required. Indeed, in *Perk v. Worden,* 475 F. Supp.2d 565 (E.D. Va. 2007), the defendant's motion to dismiss was denied even though the credit card at issue had been issued to a business, not an individual. "Plaintiff alleges that the debt was incurred for personal use, and at this stage of the proceedings that is sufficient to

---

[1] In *Dokumaci,* the court found that a pleading that identified the creditor as a hospital was not sufficient to explain the "nature of the debt."

properly state a claim." *Id.* at 569. "The Plaintiff alleges that the 'debt' in the instant case arose

out of transactions where the subject was for personal purposes. Plaintiff may well have violated

the terms of the corporate credit card agreement by incurring personal debt with it, but that fact,

even if true, cannot change the character of the debt and take it out of the FDCPA's jurisdiction."

*Id.* at 570.

Brachfeld has recently tried to make this same argument, without success, in another

court. In *Crespo v. Brachfeld Law Group,* 2001 WL 4527804 (S.D. Fla. September 28, 2011),

Brachfeld moved for summary judgment on this where the evidence merely showed that the debt

arose out of credit card transactions.

> According to Defendants, they are entitled to summary judgment
> …because, at his deposition, "Plaintiff was unable to testify to the
> nature of the original transaction or charges giving rise to the
> subject debt, was primarily used for personal, family or household
> purposes."… The Court disagrees. During his deposition, Plaintiff
> never testified that he utilized his credit cards for non-consumer
> purposes. Instead, Plaintiff merely stated that he did not
> "specifically remember each individual charge or what it was for."
> … Plaintiff submitted an affidavit with his Opposition to the
> present Motions for Summary Judgment in which he states that "I
> know with certainty that all of the charges made by me were
> consumer charges for items of personal, family, and household use.
> I did not charge any non-personal items to my credit cards." …
> Thus, the Court finds that Plaintiff has successfully demonstrated a
> disputed issue of material fact as to whether the debt at issue was
> consumer debt and denies Defendants' motions for summary
> judgment.

*Id.* at *2; *See, Balthazor v. Security Credit Svcs., LLC,* 2012 WL 171097 (S.D. Fla. January 20,

2012).

Brachfeld here seeks to hold the FAC to a higher standard of specificity than an affidavit

filed in a successful opposition to a Brachfeld summary judgment motion on the same issue in a

different case. The argument should be rejected in this case too.

**B.  Plaintiff has sufficiently alleged violations of the FDCPA**

Section 1692e(10) of the FDCPA states that the following is a violation of the statute: "The use of any false representation or deceptive means to collect or attempt to collect any debt…." Section 1692f states that "[a] debt collector may not use any unfair or unconscionable means to collect or attempt to collect a debt." Plaintiff's FAC added more detail regarding Brachfeld's violations of these provisions. Brachfeld falsely told Ms. Grant-Fletcher that she could not dispute the debt. (FAC ¶¶ 11, 14). Brachfeld threatened that it would not report a dispute to the credit bureaus, as it is required to do under § 1692e(8). (FAC ¶¶ 11, 14). Brachfeld told Ms. Grant-Fletcher that a dispute would have adverse consequences for her credit. (FAC ¶12). Without citing a single case, Brachfeld now argues to this Court that the allegations do not describe violations of the FDCPA. The argument is wrong.

"Generally, §1692e prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Warren v. Sessoms & Rogers, P.A.,* 2012 WL 76053 at *7 (4th Cir. January 11, 2012). Whether a particular act is deceptive or misleading is viewed from the perspective of the least sophisticated consumer. *U.S. v. Nat'l Fin'l Svcs., Inc.,* 98 F.3d 131, 135-36 (4th Cir. 1996). In this regard, it is well-established that a debt collector who informs a debtor in writing about his or right to dispute the debt may nonetheless be liable for violating the FDCPA where his other communications create confusion or tend to overshadow or obscure that right. *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 629 (7th Cir. 2009); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir. 1991). Courts have specifically recognized that misleading a consumer as to his or her right to dispute a debt, even after the initial 30-day, period, is a violation of the FDCPA. *See Velderman v. Midland Credit Mgmt., Inc.,* 2005 WL 2405959 (W.D. Mich. September 29, 2005). Brachfeld's

4

further false threat regarding the supposed harm that a dispute would cause Ms. Grant-Fletcher's credit only exacerbated the violation.

### C. Use of the law firm letterhead was deceptive

Section 1692e(3) of the FDCPA prohibits a misrepresentation that a letter is from a lawyer when no lawyer was involved.  Section 1692e(9) prohibits collectors from giving any false impressions as to the source or authorization of a communication.   The letter in this case claims to be from law firm.  The sender's name on the fax cover sheet and on the top of the letterhead is Christopher Johnson.   The signatory is Dana Callahan-Conley, who is a "collection manager."

There are dozens of cases that have analyzed the deceptive nature of the use of lawfirm letterhead and lawyers' names in collection letters.   As the Third Circuit has noted:  "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice. A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989).

In this case, the "authority and credibility" derive not just from the use of the Brachfeld Law Group letterhead, but from the repeated name of Christopher Johnson as the purported sender of a letter that is actually signed by someone else.  Is Mr. Johnson a lawyer?   Are there any lawyers in the Columbus, Ohio office of Brachfeld Law Group?   These are questions that a finder of fact will have to consider in assessing the deceptive and inherently threatening nature of the fax/letter that Brachfeld sent to Ms. Grant-Fletcher. *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1195 (11th Cir. 2010).

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.
>
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. That's the essence of the connotation that accompanies the title of "attorney." A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word "attorney" in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards....

*Avila v. Rubin,* 84 F.3d 222, 229 (7th Cir. 1996).   Indeed, in an ethical opinion issued in 1988, the Maryland Bar Association issued an opinion that what Brachfeld did in this case would be a violation of the code of ethics:

> [T]his Committee [on Ehtics] assumes the first two letters are to be styled in a manner to convey to the debtor that the letters are being sent by a lawyer, when in fact the client entirely controls when and to whom your form letter will be sent.  While  this deception may be viewed as inconsequential or immaterial to the transaction between your clients and the debtor, and probably calculated to be of practical benefit to your client, this Committee ... is of the opinion your proposal would be violative of the Maryland Rules of Professional Conduct.

MSBA Comm. On Ethics Op. 88-60.  (Ex. 1 hereto).

Even a letter from a "legal department" may be deceptive where there was no actual attorney involvement.  *Rosenau v. Unifund Corp.,* 539 F.3d 218, 223-24 (3d Cir. 2008) ("a debt-collection letter can be deceptive under the FDCPA even if it only applies that it is from an attorney.")  Courts therefore must carefully consider the context of attorney letters in light of the "least sophisticated consumer" standard.  In doing so, courts frequently  uphold complaints similar to the FAC in this case.

> Plaintiff also claims that the letterhead and signature misrepresented the source of the letter. I find this claim well founded. One's natural assumption is that mail comes from the address listed on its letterhead and that it is generated by the employees of the signatory, if not under his immediate or personal direction. That the letter at issue here was generated on preprinted stationery by an employee of the collection agency, at a time when defendant knew none of the particulars of this case, acquires added significance in light of its misleading contents. The contents of the letter were designed to inspire false urgency, and the misrepresentation as to its source reinforced that unnecessary panic.

*Rosa v. Gaynor,* 784 F. Supp. 1, 5 (D. Conn. 1989).

> The LLC's letter is printed on law firm letterhead, it makes repeated reference to a law firm, and it directs remittance to an individually named lawyer. But it also explicitly states that it is from a debt collector and is "signed" by an unnamed "Account Representative." Based on these conflicting aspects of the letter, we conclude that the district court erred in granting summary judgment to Margelefsky, but we will not go to the other extreme either by granting summary judgment to Kistner. Instead, a jury should determine whether the letter is deceptive and misleading— specifically, whether the letter gives the impression that it is from an attorney even though it is not.

*Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 440-41 (6th Cir. 2008).

In *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir. 1993), the Second Circuit held that the use of attorney letterhead and an electronic signature was a false and misleading practice

7

under the FDCPA § 1692e where the attorney had not given the debtor's file any meaningful

review.  In response to that opinion, some debt collectors began using the attempted disclaimer

that appears on the second page of the Brachfeld fax, to the effect that "no attorney" had

"personally" reviewed the file.  The disclaimer is sometimes known as the "Greco" warning,

based on the decision in *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360 (2d Cir.

2005). The Greco warning, however, does not insulate collectors from liability.  "If the language

that the debtor's account has not been analyzed in particular by an attorney can in some contexts

dispel the representation or impression that an attorney is pursuing the case and that a legal

action is down the road, it nevertheless does not of itself dispel that representation and

impression in all contexts." *Lesher v. Law Office of Mitchell N. Kay, P.C.,* 724 F. Supp.2d 503,

508 (M.D. Pa. 2010).

> [T]he context and placement of that disclaimer is also important.
> We do not construe the disclaimer in isolation but must analyze
> whether the letter is misleading as a whole. We caution lawyers
> who send debt collection letters to state clearly, prominently, and
> conspicuously that although the letter is from a lawyer, the lawyer
> is acting solely as a debt collector and not in any legal capacity
> when sending the letter. The disclaimer must explain to even the
> least sophisticated consumer that lawyers may also be debt
> collectors and that the lawyer is operating only as a debt collector
> at that time. Debt collectors acting solely as debt collectors must
> not send the message that a lawyer is involved, because this
> deceptively sends the message that the "price of poker has gone
> up."

*Gonzalez v. Kay,* 577 F.3d 600, 607 (5th Cir. 2009).

Thus, in *Lesher*, the plaintiff alleged that he reasonably believed that an attorney was

involved, despite the disclaimer language.  724 F. Supp.2d at 503-04.  He also alleged that the

defendant failed to make it clear that the law firm was not admitted to practice in his state, and

therefore had no authority to act there.  *Id.*  "An unsophisticated debtor would not be likely to

doubt that the defendant law firm could follow through with legal action if and when it were to

decide to do so." *Id.* at 507-08.  The court agreed that these allegations gave rise to a valid claim

of deception under the FDCPA:

> The least sophisticated consumer would be likely to believe that
> the law firm is acting as an attorney for the lender in
> communicating with the consumer concerning the loan. The least
> sophisticated consumer would be likely to believe upon receiving a
> communication from an attorney for the lender that the debt
> collection process has entered into a phase where the lender
> through its attorney will begin to use procedures established by law
> and known to attorneys to collect the debt. The least sophisticated
> consumer would be likely to believe that his property and interests
> are in some potential jeopardy…. We agree with the plaintiff that
> the least sophisticated consumer, absent any language clearly
> identifying the attorney's intent, will believe that a law firm was
> hired to take legal action if the debt is not collected and that when
> an attorney becomes involved, the matter is escalated and there is a
> serious and meaningful threat of litigation. … A law firm's letter
> does bear an implied threat of litigation, and does connote that it is
> a communication from an attorney.

> A consumer is reasonably expected to believe that a law firm is
> comprised of attorneys and that it does legal work. In the context
> of a consumer debt, a reasonable perception of consumers is that if
> a consumer debt is being handled on behalf of the lender by a law
> firm and if the amount of money that the law firm is seeking (or
> some lesser settlement amount) is not paid, then the lawyer(s) will
> use the legal process with which they are familiar and for the use
> of which they are specifically trained to obtain a mandatory order
> of payment, which order will be enforceable by penalties within
> the power of courts to impose. The implication that a
> communication to a consumer concerning a debt is from an
> attorney has a particular well-known and well-understood effect.
> That is explicitly recognized in and incorporated into § 1692e.

*Id.* at 508-09.

The FAC in this case raises the same issues as the complaint in *Lesher.* The letter at issue

was sent by fax.  The communication is contained on two pages and lists the name of

Christopher Johnson as sender on both.  The implication is that Mr. Johnson is an attorney.  The

letter implicitly threatens legal action but does not make clear that the Brachfeld firm is not

licensed to practice law in Maryland.   The rote disclaimer that an attorney had not yet reviewed

the file does not dispel the inherent threat or the misleading nature of the letter.   Under the

reasoning of the court in *Lesher,* the FAC states a valid cause of action for deception under the

FDCPA.

### D.  Brachfeld's failure to secure abe license for its Ohio location is actionable

It may be an actionable violation of collection laws for a collection agency to be

unlicensed.

> [T]he nature of part of defendant's statutory violation-attempting to
> collect a debt in Connecticut while not being licensed to do so-
> carries the potential for much wider spread illegality and
> concomitant injury than a violation related solely to one individual
> debtor.

*St. Denis v. New Horizon Credit, Inc.,* 2006 Westlaw 1965779 at *2 (D. Conn. 2006).  The rule,

as it is articulated in *St. Denis,* is a logical corollary to the broader principle that, under 15 U.S.C.

§ 1692e "[d]ebt collectors may not make false claims, period." *Randolph v. IMBS, Inc.,* 368

F.3d 726, 730 (7th Cir. 2004), citing *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996).

One crucial protection afforded to the consumer by the FDCPA is its prohibition of

collection practices that violate other state or federal laws. *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d

446, 448 (8th Cir. 2001); *Gaetano v. Payco*, 774 F. Supp. 1404, 1414-15 (D. Conn. 1990).  In

*Gaetano,* the court addressed the allegation that lack of state licensure may constitute a violation

of the FDCPA.  The court held that it did, even though, as here, the state licensing act does not

create a private cause of action.  The *Gaetano* court held the lack of licensure was a violation of

15 U.S.C. § 1692e(5), because the collection efforts were necessarily premised on threats of

actions that that the collector could not legally take, and a further violation of § 1692f which

prohibits "unfair or unconscionable" methods of debt collection because "[b]y failing to seek the proper license from the state banking commissioner, for example, the defendant deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." *Id.*

The requirements of Maryland law are clear:  "If an applicant wishes to do business as a collection agency at more than 1 place, the applicant shall submit a separate application and pay a separate application fee for each place."  Md. Bus. Reg. Code § 7-302(c).[2]  Initially, Brachfeld's argument that "there is no indication or allegation that the letter was sent from that location" listed on the front of the fax is disingenuous.  The letter is incorporated in the complaint as Exhibit 1, and may be considered part of the FAC.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999).  The FAC does not stretch the concept of plausibility when it asks the Court to assume that when the fax says is "From:  Christopher Johnson, The Brachfeld Law Group, 100 East Campus View Blvd., Columbus OH 43235," that is where it is from.

In this case, the issue of where the fax is from bears on the question of unfairness in the collection practices of Brachfeld.  "The proper inquiry is not whether failure to register constitutes a 'means' [of collecting debts], but whether [defendant's] failure to register makes the chosen means 'unfair or unconscionable. [under § 1692f]'… [Defendant's] lack of registration with the State of Florida is an appropriate consideration in deciding whether [defendant's] 'means' of collection were 'unfair or unconscionable.'"  *LeBlanc,* 601 F.3d at 1200.  The same may said of Brachfeld's lack of an Ohio site registration in Maryland.  And, the analysis applies

_____

[2] Plaintiff did inadvertently misquote the previous section of the Code in the FAC, carelessly substituting the word "wherever" for the word "whenever."  Counsel apologizes for the error and any confusion it may have caused.  The substantive statement of the law, however, that Brachfeld must secure a license for each location from which it collects debt, is accurate.

with the same force to the question of whether the lack of registration gives rise to a claim under

Maryland law which proscribes any effort to "claim, attempt, or threaten to enforce a right with

knowledge that the right does not exist."  Md. Comm. Code Ann. § 14-202(8).

      *Gaetano*, discussed above as a leading case on lack of licensure as giving rise to a

violation of the FDCPA, has been cited with approval in *Clomon v. Jackson*, 988 F.2d 1314,

1319 (2d Cir. 1993), and followed in *Sibley v. FirstCollect, Inc*., 913 F. Supp. 469 (M.D. La.

1995); *Russey v. Rankin*, 911 F. Supp. 1449, 1458-59 (D.N.M. 1995); *Kuhn v. Account Control

Technology, Inc*., 865 F. Supp. 1443 (D. Nev. 1994).  [It was also cited with approval in

*Lindbergh v. Transworld Systems, Inc.,* 846 F. Supp. 175 (D. Conn. 1994).] It is this body of law

that the defendant has contravened.

      Plaintiff concedes that courts have not been unanimous in determining that lack of

licensure is a per se violation of the FDCPA.  (A lengthy discussion of the issue can be found in

*Ferguson v. Credit Mgmt. Control, Inc.,* 140 F. Supp.2d 1293, 1299-1303 (M.D. Fla. 2001)).

All of these cases suggest that the lack of licensure must be put into context. Here, that context

should include examination of the fact that Brachfeld purports to be a law firm, supposedly

licensed in Ohio and implicitly threatening action by its Ohio attorneys against Ms. Grant-

Fletcher in Maryland.  The entire process that Brachfeld put in place by collecting from different

sites, with no information about those sites available through the Maryland Department of Labor,

Licensing and Regulation, is designed to create confusion and consternation.  Licensure would at

least make the source of the fax and letter clear but, as evidenced even today in Brachfeld's

clever insinuation that the fax may have originated somewhere else, clarity is the last thing

Brachfeld wants.

For all of the foregoing reasons, Brachfeld's motion to dismiss the First Amended Complaint should be denied.

Respectfully submitted,


_____/s/_____
Bernard T. Kennedy – No. 26843
The Kennedy Law Firm
P.O. Box 657
Edgewater, MD 21037
Ph (443) 607-8901
Fax (443) 607-8903
bernardtkennedy@yahoo.com


_____/s/_____
Thomas J. Minton – No. 03370
Goldman & Minton, P.C.
1500 Union Avenue, Suite 2300
Baltimore, MD 21211
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com


*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that, on this 30th day of January, 2012, I filed the foregoing Opposition through the Court's ECF System, and that all counsel of record will be served with copies through that system.

_____/s/_____
Thomas J. Minton – no. 03370